IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SUSAN ENDRES,

                Plaintiff,                      OPINION AND ORDER

    v.

                                                    20-cv-644-wmc

UHG I LLC and DOBBERSTEIN
LAW FIRM,

                Defendants.

In this civil lawsuit, plaintiff Susan Endres asserts claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, and analogous Wisconsin law provisions, based on collections actions by defendants, UHG I LLC, the alleged assignee of her debt, and Dobberstein Law Firm, the law firm representing UHG I, ultimately leading to the entry of default judgment against her. Before the court are defendants' respective motions for summary judgment. (Dkt. ##26, 34.) Because plaintiff lacks standing to pursue her claims under controlling Seventh Circuit caselaw, the court will grant those motions. In addition, the court will direct plaintiff's counsel to show cause why he should not be sanctioned for egregious omissions in plaintiff's opposition brief.

UNDISPUTED FACTS[1]

**A. Underlying Debt**

On or about June 27, 2014, Susan Endres entered into a retail installment contract with NC Financial Solutions of Wisconsin, LLC, d/b/a NetCredit, for purposes of

---

[1] Unless otherwise noted, the court finds the following facts undisputed and material when viewed in the light most favorable to plaintiff as the non-moving party.

borrowing $7,860.00. Endres made payments on the loan from time to time, but eventually she defaulted on the loan. On or about April 13, 2015, NetCredit accelerated Endres' remaining loan balance, meaning that the full balance became due and owing.

On or about April 26, 2018, NetCredit next assigned all of its rights, title and interest in Endres's loan to JTM Capital Management, LLC. Defendants maintain that on or about December 21, 2018, JTM Capital further assigned its rights, title and interest in that same loan to defendant UHG I LLC, although plaintiff disputes this, pointing out that: (1) there are two different bills of sales, one from JTM Capital to UHG, LLC (*not* the defendant) and one to defendant UHG I (Pl.'s Resp. to UHG I's PFOFs (dkt. #43) ¶ 5; Pl.'s Resp. to Dobberstein's PFOFs (dkt. #42) ¶ 8); and (2) the signatures on the two documents are different (*compare* Adamo Decl., Ex. C (dkt. #39-3) *with* Adamo Decl., Ex. E (dkt. #39-5)).[2] Nevertheless, defendants maintain that the document assigning the loan to UHG, LLC, was simply "mistakenly provided" to the Dobberstein law firm "as a result of a clerical error" (Dobberstein PFOFs (dkt. #33) ¶¶ 62, 64), and that "UHG, LLC did not own the Account at any time relevant to the claims asserted by Plaintiff" (*id.* ¶ 63 (citing Adamo Decl. (dkt. #39) ¶ 19)).

**B. UHG I's Role**

UHG I describes itself as a "passive debt buyer that does not engage in any collection

---

[2] To add to the possible confusion, plaintiff points out that a small claims complaint and summons filed by the Dobberstein law firm as described below identifies the plaintiff as UHG I LLC with an address of 6400 Sheridan Drive, Suite 138, Williamsville, NY 14221, but that UHG I LLC's New York Department of State filing identifies its address as a law firm located in Buffalo, New York. UHG, LLC's address, however, is listed as the same Williamsville address provided for UHG I on the small claims complaint and summons.

2

activities concerning the debt that it owns or acquires." (UHG I's PFOFs (dkt. #40) ¶ 7 (citing Adamo Decl. (dkt. #39) ¶ 4).) More specifically, UHG I explains that it does not draft or send notices to consumers, contact consumers over the phone, nor direct the activities of any third-party debt collectors contracted to collect its outstanding debts. Plaintiff also purports to dispute this characterization based on the fact that it retained co-defendants Dobberstein Law Firm to collect Endres's debt. In response, UHG I contends that by placing the Endres's account with Dobberstein for collection, it "divested itself of the right to control the lawful means by which Dobberstein engaged in its collection efforts on behalf of UHG I"; and that it did not otherwise exercise any control over Dobberstein, its employees or agents. (*Id.* ¶¶ 13-14 (citing Adamo Decl. (dkt. #39) ¶¶ 13-14).)

### C. Dobberstein's Collection Efforts

As alluded to above, there is no dispute that UHG I placed Endres's loan with Dobberstein for purposes of collection on or about June 17, 2019. That same day, Dobberstein sent a letter to Endres, which identified her current creditor as UHG I LLC, and the original creditor as Net Credit. (Am. Compl., Ex. A (dkt. #17-1).) The letter also provided the loan account number and balance due of $4,719.10, including interest. (*Id.*) The letter further explained that: "Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid." (*Id.*)

Roughly, one month later, on July 22, 2019, Dobberstein filed a small claims action in Dane County Circuit Court on behalf of UHG I against Endres to recover the claimed balance due on the loan in the amount of $4,719.10. Before being served with the

3

summons and complaint in that lawsuit, Endres also received an "Urgent!" notice from a process server containing the following:

> Our agency has legal documents for person names above. Please call me as soon as you get this notice so arrangements can Be made to receive these legal documents.
>
> Failure to call and make arrangements will result in investigative research into your private life in order to locate your whereabouts, (e.g., You place of employment, Exc.) other than your home.

(Endres Dep., Ex. 8 (dkt. #30-8) (grammatic and typographic errors in original).)

Dobberstein used Wisconsin's Choice for service in this matter and had a written contract with it at the time Endres received the letter. In its contract, Dobberstein requires Wisconsin Choice to comply with federal and state law. Dobberstein also represents that it conducts regular meetings, reviews and audits to ensure that Wisconsin Choice is complying with the contract.

At her deposition, however, Endres testified that she did not recall when she received this urgent notice from the process server, where she found it, what she thought when she read it, if she called the number listed on the letter or, more generally, what she did upon receiving it. Endres further testified that she was not worried that someone might contact employment references or past employers, and she was not worried about its impact on her getting back into the workforce, although she did not want anyone in her private life to know and found the letter "embarrassing." (Endres Dep. (dkt. #30 ) 95-

4

96.)[3]

Endres was served with the actual small claims summons and complaint on August 4, 2019, which required her to serve an answer to the complaint or appear in court on August 19, 2019, at 9:00 a.m. Endres understood that the complaint was seeking a judgment on a loan amount originally owed to NetCredit and assigned to UHG I (or, at least that UHG I was claiming her loan had been assigned to it). Endres further did not dispute the debt because she knew that she owed it, and she intended to secure a payment arrangement.

To that end, Endres called the Dobberstein law firm on August 13, 2019, at approximately 2:19 p.m., and spoke with an employee named "Grace," last name unknown. Grace went through Endres's financial information and came up with a proposed resolution of the lawsuit in exchange for a payment plan. Specifically, Endres agreed to make a payment of $1,000 down, plus payments of $324 per month for 12 months in order to pay the full loan amount still due. Endres then committed to calling back after she was done with work to set up the payment plan, which she did as promised at about 4:53 p.m. On that call, Endres spoke with Brittany Delahanty to confirm the terms of the payment plan, and the next day, Delahanty prepared a stipulation as discussed, with the first payment of $1,000 being due on August 15, 2019. Delahanty then emailed a stipulation of payments and order for dismissal to Endres, asking her to sign it and return it to her.

On August 14, at 5:40 p.m., Endres returned an executed copy, but next to the sentence, "The defendant shall pay a minimum of $1,000.00 by August 15, 2019," Endres

---

[3] Endres was not working at the time she received the letter.

wrote "on 8-14-19," with her initials (Delahanty Decl., Ex. 2 (dkt. #31-2) 3.) On August 15, 2019, at 8:55 a.m., Delahanty called Endres and left a message asking her to call her back. Delahanty explains that she intended to discuss with Endres that the signed stipulation could not be accepted because of her handwritten markings, apparently out of a belief that a court would not accept a stipulation with handwritten notations. At 9:15 a.m., Delahanty also emailed Endres to advise that she could not accept the stipulation because of the handwritten notes on it.

Endres responded in writing to Delahanty's email that same morning, indicating that she would call over her lunch break and also explaining that she had marked the stipulation because "[i]t did not say [the payment was required to be made] on or before the 15th and [she] did not want to be late." (Dobberstein PFOFs (dkt. #33) ¶ 38.) At 12:02 p.m., Endres emailed again, indicating that she was heading to the FedEx store and asking Delahanty to send the revised stipulation, so that she could return it by fax. Also that same day, at approximately 12:21 p.m., Endres called Dobberstein and spoke with Grace, indicating that she was calling to pay the $1,000 from her checking account, as she did not have a credit card. However, Grace informed Endres that she could not make a payment because "their machine was down." (Pl.'s PFOFs (dkt. #44) ¶ 38.) So that Endres would have time to mail the check, Grace also indicated that she would change the date in the stipulation to August 23, 2019, for the first payment. During that call, Endres further committed to faxing the signed stipulation later that evening.

Still, on August 15, Grace next attempted to email Endres the revised stipulation, but inadvertently sent the stipulation to the misspelled email address. As a result, Endres

6

did not receive the revised stipulation nor did she call Dobberstein before the August 19 deadline to respond to the small claims complaint or appear, despite not receiving the revised stipulation to sign.[4]

On Monday, August 19, 2019, Endres instead emailed a court clerk to say that she was hoping that the case was canceled because she had negotiated a settlement. However, Endres did not receive a response from the court indicating that the proceeding had been canceled. Instead, Endres testified at her deposition that she was simply waiting to receive from the Dobberstein law firm the revised stipulation, as well as the information as to whom she should address her check. Endres also testified that she had worked for the courts over the years and she "knew if you do not show up at a court hearing that you're supposed to have, there are consequences for that." (Endres Dep. (dkt. #30) 54, 75.) Despite this, Endres did not show up to court for August 19, nor did she file an answer. Instead, Endres attended training for a new job on August 19, having also informed someone at Dobberstein that she could not miss her job to attend the return date hearing in the state court that day. Nevertheless, a default judgment was entered against Endres on August 19, 2019.

After default judgment was entered against her, Endres received an "Order for Financial Disclosure" in the mail. An accompanying form indicated that if she did not fill out and return it, she faced up to six months of imprisonment, fines of $2,000 per day, and criminal sanctions. At that point, Endres felt she was in over her head and consulted an attorney. On or about September 5, Endres retained the same attorney representing

---

[4] Endres acknowledged that she should have followed up and did not recall why she had not.

her in this lawsuit, who filed a notice of appearance in the state small claims matter and a motion to reopen. Only at that time did the Dobberstein law firm realize that the revised stipulation had been sent to the wrong email address. As a result, the state court granted Endres's motion to reopen in January 2020, and eventually dismissed the small claims action without prejudice on February 5, 2020.

### D. Endres' Injury

Endres testified at her deposition that she had experienced an "overload of stress" as a result of the state court suit, causing her to "check[] out" and have difficulty sleeping. At summary judgment, defendants maintain that any concern or distress were related to the underlying debt and payment demands, rather than the filing of the state small claims action.

## OPINION

### I. Standing

To establish standing to bring a lawsuit in federal court, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial district." *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 667 (7th Cir. 2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Further, these requirements must be proved in "the manner" and with the "degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. In other words, while challenges to standing at the pleading stage are limited to the "factual

allegations of injury," the "plaintiff must suppl[y] evidence of specific facts that, taken as true, show each element of standing at summary judgment." *Wadsworth*, 12 F.4th at 667 (internal citation and quotation marks omitted).

Over the last two years, the Seventh Circuit Court of Appeals has issued numerous opinions concerning the requirement of standing in FDCPA cases in particular. In one of its more recent decisions, *Wadsworth*, the Seventh Circuit reiterated that a "bare procedural violation[]," without any "concrete harm," precludes adjudication. *Id.* at 666; *see also Nettles v. Midland Funding LLC*, 983 F.3d 896, 899 (7th Cir. 2020) ("Article III standing requires a concrete injury even in the context of a statutory violation."); *Bazile v. Fin. Sys. of Green Bay, Inc.,* 983 F.3d 274, 280 (7th Cir. 2020) ("[A] bare procedural violation, divorced from any concrete harm, does not satisfy the injury-in-fact requirement of Article III.") (internal quotations omitted); *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069, 1072 (7th Cir. 2020) ("[T]he asserted violation of a substantive right conferred by the Fair Debt Collection Practices Act does not guarantee the plaintiff's standing. There must still be a concrete injury."); *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1066 (7th Cir. 2020) ("[I]t's not enough for an FDCPA plaintiff to simply allege a statutory violation; he must allege (and later establish) that the statutory violation harmed him or presented an appreciable risk of harm.") (internal quotations omitted). Moreover, "standing is not dispensed in gross." *MAO-MSO Recovery II, LLC v. Am. Fam. Mut. Ins. Co.*, No. 17-CV-175- JDP, 2018 WL 835160, at *5 (W.D. Wis. Feb. 12, 2018) (quoting *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 733 (1st Cir. 2016)). Instead, where, as here, plaintiff pursues multiple claims and avenues for relief, "plaintiffs must demonstrate

standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021).

In her amended complaint, plaintiff asserts the following two causes of action. First, plaintiff asserts a claim for violation of the FDCPA, 15 U.S.C. § 1692e, and Wis. Stat. § 427.104(1)(d), (g) & (h) based on defendants' alleged false or misleading representations of the legal status of the debt and by claiming nonexistent rights. Plaintiff maintains that this claim concerns: (1) the process server's threatened investigation; (2) defendants' failure to follow Wisconsin's pleading requirements; (3) the misrepresentation that UHG I LLC, was the creditor or assignee of the debt; and (4) defendants' failure to provide Endres with a statutorily-compliant notice of assignment. Second, plaintiff raises a claim against both defendants for unfair and unconscionable practices in violation of 15 U.S.C. § 1692f and Wis. Stat. § 425.107. This claim allegedly concerns defendants' failure to honor the stipulation for dismissal after the small claims case was filed and served.

Taking each claim and form of relief sought to each claim, in turn, the court will begin with the four identified factual bases for proceeding on plaintiff's claim that defendants violated the FDCPA and Wisconsin law. First, plaintiff claims injury from the process server's "Urgent!" notice threatening an investigation into Endres's private life should she fail to contact them to arrange service of "legal documents." At her deposition, Endres conceded that the letter had little to no impact on her. In particular, Endres testified that she did not recall when she received this notice from the process server, where she found it, what she thought when she read it, if she called the number listed on the letter, or more generally, what she did upon receiving it. Endres also testified that she was

10

not worried that someone might contact her employment references or past employers, and she was not worried about its impact on her getting back into the workforce. Instead, Endres simply testified that she found the letter "embarrassing." (Endres Dep. (dkt. #30) 95-96.) Unfortunately for Endres, the Seventh Circuit has now repeatedly held that feeling embarrassed is *not* enough to support a finding of a concrete harm. *See Wadsworth*, 12 F.4d at 668 (describing "anxiety and embarrassment," complaints of "less sleep and [feeling] intimidated, worried and embarrassed," being "annoyed" or "intimidated" or being confused as "abstract harms" that do not satisfy the concrete injury requirement to establish standing).

*Second*, plaintiff asserts injury based on defendants' failure to follow Wisconsin's pleading requirements in listing the amount of the claim. Specifically, she takes issue with defendants' failure to include the breakdown of any charges occurring after the date certain in the complaint and their failure to attach a copy of the writings evidencing the transaction. (Pl.'s Opp'n (dkt. #41) 8.) However, plaintiff at summary judgment fails to explain how the lack of this information on the complaint itself, especially in light of the undisputed evidence that: (1) plaintiff received a letter on June 17, 2019, less than a month before the filing of the small claims complaint, listing the balance due; *and* (2) Endres did not dispute that she owed this amount. (Am. Compl., Ex. A (dkt. #17-1); Endres Dep. (dkt. #30) 31-32 (acknowledging that she owed the debt sought in the small claims lawsuit); Pl.'s Resp. to UHG I's PFOFs (dkt. #43) ¶ 25 (not disputing proposed finding).)

As the Seventh Circuit explained in *Spuhler v. State Collection Services, Inc.*, 983 F.3d 282 (7th Cir. 2020), "[t]he failure to provide information that is required under the

11

FDCPA inflicts a concrete injury only if it impairs a plaintiff's ability to use the withheld information for a substantive purpose that the statute envisioned." *Id.* at 286; *see also Kwasniewski v. Medicredit, Inc.*, No. 19-CV-701-WMC, 2021 WL 248442, at *3 (W.D. Wis. Jan. 25, 2021) (explaining that confusing information in a dunning letter may give rise to an injury if "the confusion leads her to pay something she does not owe, or pay a debt with interest running at a low rate when the money could have been used to pay a debt with interest running at a higher rate") (quoting *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068 (7th Cir. 2020), *reh'g denied* (Jan. 11, 2021)). Here, plaintiff has failed to provide *any* evidence or argument to support a finding that the missing information would have allowed her to challenge the small claims collection action, or adversely impacted her in any other respect.

*Third*, plaintiff contends that defendants violated the FDCPA and Wisconsin law by misrepresenting that UHG I LLC was the ultimate assignee of her loan agreement with NetCredit. Without UHG I as the assignee, there would have been no basis for defendants pursuing a small claims action against plaintiff much less obtaining the default judgment. However, this contention again begs the question of whether Endres suffered an *injury* because of the defendants' bringing a collection action or briefly obtaining a default judgment. Crucially, the record is undisputed that the small claims action was short-lived and eventually dismissed, with plaintiff paying nothing as a result of the action or the judgment. While plaintiff admittedly had to hire an attorney to defend that action, the Seventh Circuit has made clear that this action, at least standing alone, does not constitute an injury for purposes of satisfying standing. *See Brunett v. Convergent Outsourcing, Inc.*, 982

F.3d 1067, 1069 (7th Cir. 2020), *reh'g denied* (Jan. 11, 2021) ("A desire to obtain legal advice is not a reason for universal standing. The plaintiffs in *Thole*, *Spokeo*, *Hein*, and *Richardson* all had counsel. They had been concerned, confused, disturbed, or upset enough to ask lawyers for help. But the Supreme Court held that only people who can show personal, concrete injuries may litigate."); *see also Milisavljevic v. Midland Credit Mgmt., LLC*, No. 19-CV-08449, 2022 WL 204371, at *6 (N.D. Ill. Jan. 24, 2022) ("[T]he time, money, and energy he has spent hiring a lawyer and working to vacate the state-court judgment are not injuries sufficient to confer standing.").

In a single sentence, plaintiff's counsel acknowledges this court's decision in *Lako v. Portfolio Recovery Associates*, No. 20-cv-355-wmc, 2021 WL 3403632 (W.D. Wis. Aug. 4, 2021), rejecting a defendant's challenge to standing in part based on a finding that the plaintiff was on the hook to pay actual monetary costs in defending a state court action. *Id.* at *4. In the same paragraph, he also cites to *Crabtree v. Experian Info. Sols., Inc.*, 948 F.3d 872, 881 (7th Cir. 2020), finding standing based on costs to defend against a lawsuit. However, while citing both cases, the plaintiff here has not represented, nor put forth any evidence to support a finding, that she similarly incurred any costs in defending against the small claims action or otherwise was tangibly impacted by the action. *See Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 938 (7th Cir. 2021) ("Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." (internal citation and quotation marks omitted)).

In a cursory fashion, Endres also lobs various arguments in an attempt to find other

13

injury premised on the state court collection action. For example, Endres persists in claiming that the default judgment constituted a change in her "status as a result of defendants' actions," and, therefore the judgment itself satisfies the concrete injury requirement, even though it was vacated and the case was dismissed, citing *Evans v. Portfolio Recovery*, 889 F.3d 337 (7th Cir. 2018), for support. (Pl.'s Opp'n (dkt. #41) 5.) In *Evans*, however, the Seventh Circuit considered whether defendant's failure to include in a credit report that a debt was disputed constituted an injury satisfying standing. 889 F.3d at 345. Specifically, the court reasoned that "the risk of financial harm as result of credit reporting agencies lowering their credit score" constitutes an injury. *Id.* at 346. The *Evans* court did *not* hold that a change in "status" -- whatever that may mean generally or entry of a default judgment specifically -- was a sufficient action in and of itself to satisfy Article III. *See Kasten v. LVNV Funding, LLC*, No. 19-CV-428, 2021 WL 1102163, at *7 (E.D. Wis. Mar. 23, 2021) (rejecting standing based on fact of default judgment being entered in state court explaining that "[a]lthough [plaintiff] asserts that the lawsuit against him in the wrong venue is now public record, how this bare assertion demonstrates standing is unclear"). Indeed, developing case law surrounding standing in the Seventh Circuit, suggest a plaintiff must be on all fours with *Evans* to support standing to support such a claim.[5]

---

[5] Indeed, in this case, plaintiff has not meaningfully argued, much less shown by evidence at summary judgment, that the entry of default judgment was in error except by virtue of a stipulation with defendants for an installment plan that she had yet to sign *or* make a first payment, leaving only pure speculation as to how plaintiff was injured, if at all, for the default judgment being in a place for a short time. More recently, the Seventh Circuit has also called into question its holding in *Evans*, explaining that in light of *Trans Union*, a "mere risk of harm, without more, is insufficiently concrete to permit standing to sue for damages in federal court." *Ewing v. MED-1 Sols., LLC*, No. 21-1276, 2022 WL 303366, at *4 (7th Cir. Feb. 2, 2022). This case provides further support that the mere possibility that Endres could have paid money to UHG I LLC or otherwise suffer from a default judgment is not sufficient to establish standing.

Plaintiff also argues the specific actions of the defendants that she claims violated the FDCPA "closely resemble a legal interest protected at common law," citing the United States Supreme Court's recent decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), as support. (Pl.'s Opp'n (dkt. #41) 5.) Specifically, plaintiff argues that defendants' act of suing her without the legal right to do so is "akin to malicious prosecution or abuse of process, both of which are traditional common law claims." (*Id.* at 9.) However, the Supreme Court analogizing the incorrect information in credit reports to the common law tort of defamation in *TransUnion* does not in and of itself confer standing. Instead, as the Court explained, by providing "third parties with credit reports containing [] alerts that labeled the class members as potential terrorists, drug traffickers, or serious criminals," may mean those members suffered a "harm associated with the tort of defamation." 141 S. Ct. at 2209; *see also Ewing v. MED-1 Sols., LLC*, No. 21-1276, 2022 WL 303366, at *4 (7th Cir. Feb. 2, 2022) ("If the Consumers' harm is analogous to defamation, then they must demonstrate that the Debt Collectors disseminated false information about them to a third party."). In contrast, the plaintiff here has failed to explain or offered any evidence of the harm she suffered from defendants' filing of the small claims action that was dismissed or from entry of default judgment that was vacated.

*Fourth*, and finally, plaintiff pursues a claim under 15 U.S.C. § 1692e and Wis. Stat. § 427.104(1)(d), (g) & (h) based on her allegation that defendants provided a statutorily inadequate notice of assignment. Plaintiff's *evidence* in support of a claim of inadequate notice is her assertion that UHG I LLC was not the assignee, but rather UHG LLC was. Here, too, plaintiff fails to explain *how* -- even assuming that she is correct that the assignee

15

was UHG LLC -- this misinformation compromised her ability to protect her rights or otherwise constituted a concrete injury. *See Spuhler*, 983 F.3d at 286.  Plaintiff never paid any money to UHG I LLC; nor does she develop any argument that this misinformation impacted other financial decisions.

This just leaves plaintiff's broader, second claim that defendants also engaged in unfair and unconscionable practices by refusing to honor the terms of a settlement. However, these allegations do not establish standing either.  At most, plaintiff represents that the stipulation *almost* resulted in her paying UHG I $4,881.60.  (Pl.'s Opp'n (dkt. #41) 12 ("Ms. Endres was placed at an appreciable risk of harm because she was asked to pay nearly $5,000 to a company that she did not owe money to[.]").)  This so-called "risk," is also not proof of actual injury to establish standing under Seventh Circuit case law. Again, unlike risk of financial harm caused by misrepresentations on a credit report, the risk that she would pay the wrong company was for a finite period of time that resolved before she ever paid or filed this lawsuit; unlike the risk of financial harm based on actions by prospective creditors, it was also always within her control.

Plaintiff also argues that "[w]here the violation of the FDCPA denies the litigant the ability to stop (even temporarily) a lawsuit, the litigant has standing to sue under the FDCPA," citing *Lavallee v. Med-1 Solutions, LLC*, 932 F.3d 1049 (7th Cir. 2019).  However, once again, the cited case does not provide the support plaintiff claims.  In *Lavallee*, the Seventh Circuit considered whether an allegation that the defendant failed to provide *any* disclosure (not simply an incomplete one) constituted an injury, satisfying Article III standing.  *Id.* at 1053.  Specifically, the court reasoned that because the defendant had

16

failed to provide plaintiff with any information about her "right to contest or request verification of the debt," she

> stood at a distinct disadvantage. If she had known about her rights, she could have disputed and sought verification of the debts—thereby requiring Med-1 to cease the collection action and obtain verification.

*Id.* However, here plaintiff again fails to offer *any* evidence that defendants' failure to honor the terms of the unexecuted stipulation prejudiced her in a manner similar to that in *Lavallee*.

For all of these reasons, the court concludes that plaintiff lacks standing to pursue her claims, and the court will grant that portion of defendants' motions challenging standing, while dismissing her claims without prejudice. *See Am. Bottom Conservancy v. U.S. Army Corps of Eng'rs*, 650 F.3d 652, 660 (7th Cir. 2011) (explaining that a dismissal for lack of standing is a dismissal for lack of subject matter jurisdiction and must be without prejudice).

## II. Show Cause Order

Having dismissed plaintiffs' claims for lack of standing, the court need not (indeed, cannot) reach the merits, but the court's review of plaintiff's briefing on the merits of her claims raises serious concerns about her counsel's lack of candor to the court. In particular, the court is deeply troubled by plaintiff's failure to acknowledge the United States Supreme Court's holding in *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017), by arguing that defendant UHG I LLC was a debt collector under the FDCPA. The Supreme Court held that this determination turns on whether the defendant is "attempt[ing] to

17

collect debts owed *another*," rather than a debt owed to defendant. *Id.* at 1724. In so holding, the Supreme Court specifically rejected the Seventh Circuit's position that the determination depended on whether the debt was already in default at the time it was acquired by the defendant. *Id.* at 1721 (discussing circuit split and citing to *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 501 (7th Cir. 2008)); *id.* at 1723-24 (rejecting argument based on status of debt at the time it was acquired). Despite this controlling contrary decision, plaintiff's counsel attempted in the opposition brief to fault defendant for positing an argument that was "rejected more than a decade ago when the Seventh Circuit held that

> '[w]here...the party seeking to collect a debt did not originate it but instead acquired it from another party, we have held that the party's status under the FDCPA turns on whether the debt was in default at the time it was acquired.'

(Pl.'s Opp'n (dkt. #41) 35 (quoting *Ruth v. Triumph Partnerships*, 577 F.3d 790, 796 (7th Cir. 2009)).) Indeed, even a simple search in Westlaw reflects that the Seventh Circuit subsequently recognized the Supreme Court's holding in *Henson*, now controlled, as it must, and rejected any standard based on the status of the debt at the time it was acquired. *See, e.g., Schlaf v. Safeguard Prop., LLC*, 899 F.3d 459, 466 n.26 (7th Cir. 2018); *Parker v. Cap. One Auto Fin., Inc.*, 729 F. App'x 482, 484 (7th Cir. 2018).[6]

And, this is not the only egregious oversight in plaintiff's response brief. In opposing defendants' argument that Wis. Stat. § 425.107 cannot be the basis for an affirmative

---

[6] The *Ruth* court in turn relied on *McKinney*, the very case cited by the Supreme Court in rejecting this position. 577 F.3d at 796-97.

18

claim, plaintiff failed to acknowledge a contrary, controlling Wisconsin Supreme Court decision, decided before this lawsuit was even filed, which essentially forecloses her claim. To be fair, plaintiff acknowledged in her brief that a number of federal district court cases and the Wisconsin Court of Appeals had rejected plaintiff's theory that she had a private right of action to pursue a claim under § 425.107. (Pl.'s Opp'n (dkt. #41) 21-22 (citing *Security Finance v. Kirsch*, 2018 WI App 35, ¶ 18, 382 Wis. 2d 271, 915 N.W.2d 730).) Nevertheless, plaintiff argued that all of these holdings were incorrect, urging the court to reject them and allow her to pursue this claim without acknowledging a definitive decision by the Wisconsin Supreme Court to the contrary issued in *2019*, a full year before plaintiff filed her complaint in this case, concluding that "a creditor's failure to provide such notice does not constitute a sufficient basis for relief under ch. 427." *Sec. Fin. v. Kirsch*, 2019 WI 42, ¶ 31, 386 Wis. 2d 388, 926 N.W.2d 167. While the plaintiff in *Kirsch* did not appeal the Wisconsin Court of Appeals' holding specific to § 425.107, *see* 2019 WI 41, at ¶ 18, the Wisconsin Supreme Court's reasoning is certainly relevant to this court's attempt to predict the Wisconsin Supreme Court's holding as to a § 425.107 claim specifically. *See Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 636 (7th Cir. 2002) ("[T]he duty of the federal court, sitting in diversity, is to determine the content of state law as the highest court of the state would interpret it.") (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)).[7]

---

[7] And, indeed, in a very recent opinion, the Wisconsin Supreme Court held that a claim of unconscionability under § 425.107 is only available in actions or other proceedings brought by a creditor to enforce rights. *Duncan v. Asset Recovery Specialists, Inc.*, No. 2022 WI 1 (Wis. Jan. 6, 2022) (available at dkt. #73-1).

In light of the court's concerns with these glaring deficiencies in briefing the merits of plaintiff's claims, therefore, the court will direct her counsel to show cause as to why he should not be sanctioned.

ORDER

IT IS ORDERED that:

1) Defendants Dobberstein Law Firm and UHG I LLC's motions for summary judgment (dkt. ##26, 34) are GRANTED IN PART AND DENIED IN PART. The motions are granted as to defendants' challenge to plaintiffs' standing; in all other respects, the motions are necessarily denied and plaintiffs' claims are DISMISSED WITHOUT PREJUDICE for lack of standing.

2) The telephonic conference scheduled for February 22, 2022, is CANCELED.

3) On or before March 1, 2022, plaintiff's counsel is required to show cause why he should not be sanctioned for failing to identify and disclose to the court controlling case law in plaintiff's opposition brief.

4) The clerk's office is directed to enter judgment in defendants' favor.

Entered this 15th day of February, 2022.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge