## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

**SUSAN ENDRES,**

        Plaintiff,

Vs.                                   **CASE NO.** 20CV644

**UHG I LLC**
And
**DOBBERSTEIN LAW FIRM**,

        Defendants.

## PLAINTIFF'S BREIF REGARDING
## ORDER TO SHOW CAUSE

This Court in its order of February 15, 2022, required that plaintiff's counsel "show cause why he should not be sanctioned for failing to identify and disclose to the court controlling case law in plaintiff's opposition brief."  Plaintiff's counsel submits this brief and accompanying declaration for the Court's consideration.

### Legal Rules:

Under Wisconsin's Supreme Court Rules for lawyers, a lawyer

> shall not knowingly… fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel.

SCR 20:3.3(2).[1]  The Seventh Circuit has made clear that counsel are to adhere to this duty in federal court.  See Tao Chen v. Lynch, 810 F.3d 466 (7th Cir. 2016) (Citing to Illinois Rule 3.3).

In Tao Chen, the Seventh Circuit ruled on a petition for review of a Board of Immigration Appeals decision. The Court denied the petition, and noted in a footnote that

---

[1] Wisconsin's rule is identical to the Model Rules of Professional Conduct.

> We are troubled that Chen's counsel failed to mention in his brief *Weiping Chen v. Holder*, 744 F.3d 527 (7th Cir. 2014), which constitutes "legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client." Ill. R. Prof'l Conduct 3.3. Chen's counsel represented the petitioner in *Weiping Chen* and thus knew of this legal authority. With this omission, Chen's counsel came perilously close to violating his duty of candor towards this tribunal in the present case. *Id.* Therefore, Chen's counsel should take care to disclose and address relevant legal authority, both favorable and unfavorable, in the future.

810 F.3d 466 at n.2. Whether a lawyer has violated his obligation is left to the discretion of the district court. Wojan v. General Motors Corp., 851 F.2d 969, 976 (7th Cir. 1988) (Failure to cite to nonprecedential case from another jurisdiction, "while suspect" did not require sanctions under F.R.C.P. 11).

The rule does not require lawyers to "present an impartial exposition of the law," but rather imposes a duty on the lawyer to "not allow the tribunal to be misled by false statements of law… that the lawyer knows to be false." SCR 20:3.3, Comment 2. However, disclosure of *known* adverse authorities if not disclosed by an opposing party is still required. Id., Comment 4.

### **Argument:**

This Court has raised two concerns: first, plaintiff's counsel's lack of discussion of the impact of Security Finance v. Kirsch, 2019 WI 42, 386 Wis.2d 388, 926 N.W.2d 167 on plaintiff's section 425.107 arguments,, and second, plaintiff's counsel's lack of discussion of Henson v. Santander Consumer USA, Inc., 137 S. Ct. 1718 (2017). Each will be discussed in turn.

I.    **Under the facts of this case, plaintiff's counsel had a genuine good faith belief that _Kirsch_'s opinion had no effect on the Endres claims, and numerous other lawyers and judges appeared to believe likewise.**

Endres' counsel argued that the defendants' conduct with respect to the stipulation – refusing to let her make a payment and allowing a default judgment to be entered despite what counsel argued was an enforceable stipulation – violated section 425.107.  This Court ruled that those allegations did not give Endres standing to sue under the FDCPA, and while it did not rule on the validity of the 425.107 claims, suggested that based on _Kirsch_, this Court would have rejected plaintiff's argument that she could raise a "standalone" section 425.107 claim. For several reasons, plaintiff's counsel at all times had a good-faith argument that the _Kirsch_ opinion would not bar such a claim.

A.   **The _Kirsch_ holding was a narrow one that a reasonable lawyer could read as not applying to other factual circumstances.**

First, the Wisconsin Supreme Court in _Kirsch_ appeared to disclaim a wider impact of its holding. Kirsch (who was represented by Attorney Pagel in that case) did not petition for review of the section 425.107 claims in that matter, and the majority opinion in _Kirsch_ noted the narrowness of the question it decided:

> The petition for review presented one issue: Whether a customer [who has been sued] on a consumer credit transaction without first receiving a notice of right to cure default may sue the merchant for damages under chapter 427 of the Wisconsin Consumer Act?  This Court's order granting Kirsch's petition for review provides that pursuant to Wis. Stat. Sec. (Rule) 809.62(6) [Kirsch] may not raise or argue issues not set forth in the petition for review.

2019 WI 42 at par. 6-7.  The Court refused to address other arguments: "We will not reach this new argument… for an independent… ch. 425 claim…" (Id. at n. 3).  As a result, Endres' counsel in this matter legitimately believed that _Kirsch_ was a narrower opinion than the scope

this Court gives it. Given that counsel discussed the adverse holdings of other cases that specifically dealt with that statutory section, Attorney Pagel believed it was not necessary to discuss an opinion that did not directly discuss section 425.107 and which took pains to say how narrow its holding was, limiting its impact to a holding that section 427.104 was not violated by filing a complaint without first complying with the appropriate right to cure procedure.

### B. *Kirsch* acknowledges that not all 'procedural' errors are subject to its ruling.

Secondly, *Kirsch* does not clearly eliminate the possibility that "procedural" errors do not confer substantive rights. As noted by the concurring opinion, after *Kirsch*,

> Sec. 427.104(1)(j) either penalizes a procedurally flawed complaint (Kett) or it doesn't (Security Finance). Both propositions cannot be true simultaneously.

Kirsch, 2019 WI 42 at par. 36. (Kelly, J, concurring.)  The *Kett* referred to by Justice Kelly is Kett v. Community Credit, 228 Wis.2d 1, 596 N.W.2d 786 (1999), in which the Wisconsin Supreme Court held that section 427.104(1)(j) was violated when creditors filed replevin actions in the wrong county, obtained default judgments, and then seized collateral under those judgments.  Justice Kelly believed that under *Kirsch*, it would still be possible to rely on *Kett* and bring a "procedural claim" for damages under the Wisconsin Consumer Act; while he wanted to overrule *Kett* for that reason, the Court did not take him up on that proposition. So a "procedural error" claim that was closer to *Kett* and farther from *Kirsch* would be viable and not barred by *Kirsch*.

**C.  Counsel for Endres did not present the section 425.107 claim as a 'procedural error' similar to the filing of a lawsuit without complying with a notice requirement, but rather as a substantive violation.**

But thirdly and perhaps most importantly in counsel's eyes, Attorney Pagel did not view the section 425.107 claim as a "procedural error." Attorney Pagel's argument was that under Wisconsin law, the stipulation was enforceable even though not signed; and that because there was a stipulation to resolve the debt, it was a *substantive* violation for the defendants to allow the case to go to default judgment.

*Kirsch* did not rule on that issue at all. Instead, it specifically ruled that filing a suit without first providing a right to cure did not violate section 427.104, Wis. Stats., because:

> at the time that Security Finance filed its complaint, a valid and binding loan agreement had been defaulted on… and money was due to Security.  In other words, it had the 'right' to enforce compliance with the agreement.

*Kirsch*, 2019 WI 42 at par. 14.  Endres' situation was different: Endres, in counsel's eyes, had a valid settlement agreement allowing for payments over time, and because of that, the defendants lacked the right to enforce an *unbreached* settlement agreement by having a judgment entered requiring all payments at once.

**D.  Even assuming *Kirsch* was relevant to Attorney Pagel's arguments, the *Duncan* case's pendency provided a good-faith basis for believing that the Wisconsin Supreme Court might allow 'standalone' claims under section 425.107.**

Attorney Pagel also believes that any impact *Kirsch* may have had on this case was lessened by the fact that he had a more on-point case pending which directly involved a section 425.107 "standalone" claim, the *Duncan* case noted by the Court in its opinion.  *Duncan* directly raised the question of a plaintiff bringing a "standalone" 425.107 claim.  *Duncan* had been filed

in state court in July, 2017. The federal portion of the *Duncan* case was on appeal to the Seventh Circuit at the time, so the state court case was stayed on February 1, 2018.

On June 20, 2019[2] the state circuit court dismissed Duncan's complaint on summary judgment; the Court did not rule on whether Duncan's 425.107 claim was validly brought in her complaint, finding instead that Duncan had not submitted sufficient evidence to get past summary judgment on that claim.

Duncan appealed, and oral arguments at the Wisconsin Court of Appeals were held on April 6, 2020. At the Court of Appeals' level, the parties argued about whether Duncan was entitled to a trial on section 425.107 claims.

Endres' complaint in this case was filed on July 13, 2020. The complaint specifically alleges that:

> Although federal courts have in the past ruled that section 425.107 cannot be used affirmatively, the Wisconsin Court of Appeals, as of the date this complaint is filed, is currently considering a case that would allow plaintiffs to bring claims for relief under section 425.107, and Endres thus brings her 425.107 claims here in good faith and requesting that courts either reconsider or reject the reasoning of nonbinding earlier decisions regarding whether plaintiffs can bring claims for relief under section 425.107 of the Wisconsin statutes.

R. 1, par. 66.

On July 30, 2020, the Court of Appeals ruled in Duncan's favor, reversing the dismissal and remanding the case. The Court of Appeals did not rule on whether a "standalone" claim could be brought: it noted that

> These proceedings, including this appeal, have focused almost exclusively on the question of whether the defendants violated Wis. Stat. Sec. 425.206(2)(h). As a result, the parties' arguments on the separate question of the interpretation and application of Wis. Stat. Sec. 425.107(1) are undeveloped and ignore certain consequential issues.

---

[2] All circuit court dates may be verified on the Wisconsin Circuit Court Access program, wcca.wicourts.gov, Dane County case number 17 CV 1704, *Duncan v. Asset Recovery Specialists, Inc.*

Duncan, 2020 WI App 54, par. 44[3].  The Court of Appeals noted in a footnote that federal courts had concluded no standalone claim could be brought, but said that "[o]n remand, the parties and the circuit court are free to address the appropriate disposition" of the 425.107 claim.

Thus, just a few weeks after the complaint in this case was filed, the Court of Appeals' opinion allowed for either party to make the argument that the federal courts' interpretation of Section 425.107 should be accepted or rejected by Wisconsin courts.  And while admittedly the Court did not rule on the 425.107 argument, it also did not suggest that such an argument would be likely to fail under *Kirsch*, and its opinion did not reference *Kirsch* at all.

Before *Duncan* could go back to the Circuit Court, the defendants petitioned the Wisconsin Supreme Court for review. That petition was filed on August 28, 2020, and raised the question of whether a standalone 425.107 claim could be brought. In that petition, the defendants cited to the three federal court cases, but only the Court of Appeals' opinion in *Kirsch* (the 2018 WI App 35, 382 Wis.2d 271, 915 N.W.2d 730.)  Duncan's counsel (Attorney Pagel) cross-petitioned for the Court to specifically review the ability to bring a section 425.107 standalone claim, and the Wisconsin Supreme Court on January 25, 2021 granted the petition for review, including that the parties must address

> Whether a plaintiff may bring an affirmative claim under Wis. Stat. Sec. 245.107, or whether that section is limited to being raised only defensively in response to a suit by a merchant or creditor.

Wis. S. Ct. Order, Jan. 25, 2021, 19 AP 1365. It takes at least three Wisconsin Supreme Court justices voting in favor of review for a petition for review to be granted.  Wisconsin Supreme Court Internal Operating Procedures, Sec. III. B.[4]  While Attorney Pagel could not know how

---

[3] Dates and copies of briefs and opinions are available online at wscca.wicourts.gov under Appeal Number 19AP1365.
[4] Available online at wicourts.gov/sc/iopsc.pdf

many votes there were for granting review of the section 425.107 issue, he was aware that the lineup of the *Kirsch* court had changed,[5] and that those changes may mean that the Court was more in line with the *Kett* line of thinking than the *Kirsch* line of thinking, and that at least three justices felt the case was worth hearing.

The parties, and several *amici* then briefed *Duncan*.  Again, the defendants cited only to the Court of Appeals' version of *Kirsch*, not the Wisconsin Supreme Court's opinion. Duncan's brief responded to that argument, noting the arguments for rejecting that interpretation, and did not address the Supreme Court ruling in *Kirsch*.  In reply, the petitioner/defendants did not bring up the *Kirsch* Supreme Court opinion. The amicus briefs for the Wisconsin Credit Union League and American Financial Services Association[6] referenced only the Court of Appeals' version of *Kirsch*, while speculating (wrongly) on why Attorney Pagel had not sought review of the section 425.107 issue in that case.[7]

Oral argument in *Duncan* was held on September 15, 2021, about two weeks before Endres' response was due in this case. On summary judgment briefing in Endres' case, arguing against a standalone claim under section 425.107, defendant Dobberstein cited only to the Court of Appeals' version of *Kirsch* when addressing the section 425.107 claims. (R. 27, p. 27.) Defendant UHG I raised the Wisconsin Supreme Court *Kirsch* opinion only in addressing its affect on Endres' section 427.104 claims, not with respect to the section 425.107 claims, (R. 35,

---

[5] The justices who took part in *Kirsch* were Justices Ziegler, Kelly, Rebecca Bradley, Ann Walsh Bradley, and Abrahamson. Justice Dallet did not participate in the case. In *Duncan*, Justice Kelly was no longer on the court, and the Court had new Justices Karofsky and Dallet, both of whom are generally considered to be on the liberal wing of the court; and Justice Hagedorn, who on several notable occasions had broken with the conservative wing of the court.

[6] The amicus brief for the Wisconsin Bankers' Association did not mention either *Kirsch* or Section 425.107.

[7] The actual reason for not petitioning for review on that issue was because while the petition for review was pending, the Kirsches had, through their lawyer, filed a new action against Security Finance in case number 17 CV 613, Washington County that expanded the issues litigated between Security Finance and Kirsch. That case was resolved by settlement after being sent to arbitration.

p. 14), while Dobberstein argued that the *Kirsch* Supreme Court opinions meant that Endres' claims regarding section 425.10**9** could not succeed. (R. 48, p. 3.)[8]

The opinion in *Duncan* was issued on January 6, 2022; in that opinion, while the majority of the Court rejected the idea of a "standalone" section 425.107 claim, at least as arising in response to a nonjudicial repossession, none of the justices referenced either *Kirsch* opinion – neither the Court of Appeals' nor the Wisconsin Supreme Court's opinions were cited by any justices. The majority adopted the reasoning of the federal courts expressly, 2022 WI 1 at par. 27.

Justice Karofsky dissented from the portion of the holdings that disallowed a standalone action. Id. at par. 53.  The dissenting judges did not address the section 425.107 claims at all.

The first point of the foregoing recitation is that, while this Court believed that the Wisconsin Supreme Court opinion in *Kirsch* was sufficiently on point and adverse to Endres' arguments in this case so as to invoke Rule 3.3, numerous other lawyers and judges, in considering these issues, never cited to the *Kirsch* Wisconsin Supreme Court opinion, even as supporting authority or as suggesting that it might apply to a section 425.107 standalone claim argument.  This suggests that it was reasonable for Attorney Pagel to not view *Kirsch*'s Wisconsin Supreme Court opinion as not directly adverse or relevant within the meaning of Rule 3.3.  While these other lawyers and justices were not required to discuss the *Kirsch* Supreme Court opinion, it is reasonable to assume that at least some of them would have brought it up if they felt it were sufficiently on point to support their arguments.

---

[8] While not at issue in this response, Dobberstein is incorrect about the holding in *Kirsch* barring a section 427.104 claim. A customer may make a claim that a pleading error under section 425.109 constitutes a violation of "Chs. 421 to 427… [if] the customer establishes by a preponderance of the evidence that the failure to comply was willful or intentional." Sec. 425.109(4), Wis. Stats.

The second point of the foregoing is that the debate over the propriety of bringing a standalone claim under section 425.107 was an ongoing question the entire time Endres' case was pending. It was not until January 6, 2022, that the Wisconsin Supreme Court held that a section 425.107 standalone claim was not allowed, and even then, the *Duncan* opinion did not directly address the ultimate issue in this case, which was whether Endres could bring a "standalone" claim in a separate action in response to a lawsuit filed against her that had been dismissed. Counsel for Endres briefed this issue

Based on the foregoing, Attorney Pagel respectfully submits that there was no sanctionable conduct in not discussing the effect of the Wisconsin Supreme Court's holding in *Security Finance v. Kirsch* in his briefing on the issue of section 425.107 claims in this matter.

## II.   Attorney Pagel was genuinely unaware of the *Henson* decision at the time of briefing this case, and it was reasonable for him to not have (re)discovered it in responding to the motion for summary judgment.

This Court's second issue was that Endres' counsel did not cite the U.S. Supreme Court's holding in Henson v. Santander USA, Inc., 137 S.Ct. 1718 (2017), and noted that two cases in the Seventh Circuit had recognized that "*Henson* now controlled, as it must…".

Attorney Pagel will concede that until the filing of UHG I's reply brief, he did not recall the holding in *Henson*, and admits that it did not turn up in his review of case law during the preparation of his brief; instead, until he saw the case referenced in UHG I's reply brief, he simply did not recall the case and after reading it, did not view UHG I's reference to it in reply as requiring him to take any action to correct the matter.

To understand how this could happen, and why any error was unintentional, the Court must first know how Attorney Pagel keeps up with case law, and how he prepares legal arguments in response to a motion for summary judgment.

**A. Attorney Pagel's method for keeping up with case law developments is reasonable.**

As set out in the accompanying declaration, Attorney Pagel attempts to keep up to date with case law through several means. He reviews an update email each week setting forth that week's opinions from the Wisconsin appellate courts. He at least monthly reviews new U.S. Supreme Court and Seventh Circuit (including lower district courts in Wisconsin, Indiana, and Illinois) opinions which include the words "Fair Debt" or "Wisconsin Consumer Act," to determine their effect on any cases he might have pending or be intending to bring. He also periodically reviews cases in his other major areas of practice, as time allows, and he exchanges emails and information with other consumer lawyers.

*Henson* was issued on June 12, 2017. It is likely Attorney Pagel would have seen the opinion in one of his updates, and may have reviewed it, but as he acknowledges, he had no memory of that particular case when he began drafting a response to the motions for summary judgment in this case in September 2021.

**B. The methods by which Attorney Pagel reviews and responds to motions is also reasonable, and in this case did not bring *Henson* up because the arguments made by UHG I did not squarely address *Henson's* holding.**

The method by which Attorney Pagel responds to a summary judgment motion is set out in more detail in his declaration, but it follows these steps:

- ■ Review all cases cited by defendants; review actual opinions of any cases counsel is unfamiliar with.

- ■ Update the case opinions to see if they have been negatively affected or cited by any other courts.

11

■ If the cases cited by defendant are not on point or do not address an issue Attorney Pagel wants to bring up, perform any additional research to locate and update any necessary case law.

The "updating" of case law under the research system attorney Pagel used was somewhat cumbersome, but had worked sufficiently well for a number of years, and so Pagel continued to rely on that.

Here is how that played out in this case, again as set forth in more detail in Attorney Pagel's accompanying declaration.

**C. Reviewing UHG I's arguments did not lead Attorney Pagel to the *Henson* opinion.**

UHG I argued that it was not a debt collector but was instead a creditor because

> It is undisputed that UHG I is a passive debt buyer that does not engage in any collection activities concerning the debt it acquires, including Plaintiff's Account.

(R. 35, p. 6). UHG I never clearly stated it was relying on *Henson,* or the two Seventh Circuit cases that have referenced *Henson* since that opinion came out.  Instead, UHG I's primary argument appeared to Attorney Pagel to be that UHG I had not actually engaged in "debt collection activities" and so therefore could not be a "debt collector":

> UHG I does not contact consumers in any manner; direct the activities of any third-party debt collectors; employ any individuals who actively attempt to collect debts; or even accept payment from consumers related to accounts that it owns

(R. 35, p. 6).  Two pages into its argument, UHG I pivoted slightly to argue that it was not a debt collector but a creditor, but in doing so it did not argue that *Henson* controlled that decision (because it did not mention *Henson* in that brief), and cited to a case that did *not* involve an assignee of a debt (Perry v. Capital One Bank, 2008 WL 4937904, at *3 (C.D. Ill. 2008), R. 35 p. 9) before citing to one case that was not controlling but which did suggest that assignees of debts

could not be debt collectors:  Washington v. Weinberg Mediation Grp., LLC, 468 F. Supp. 3d

966 (N.D. Ohio 2020)

Washington did not mention Henson at all; while it referenced the fact that the defendant

was a debt buyer, it also noted that the defendant, as UHG I argued, said it took no actions to

collect debts. The *Washington* opinion did note that the Third Circuit had apparently rejected the

argument that one could only be a creditor or debt collector but not both.

Most of the cases cited by UHG I would not have automatically led Attorney Pagel to

*Henson*, since *Henson* had not been decided when they were cited. The cases UHG I referenced

in its opening brief that were issued at a time when *Henson* could have been referenced were:

Lewis v. Nw. Collectors, Inc., 2017 WL 385041, at *6 (N.D. Ill. 2017). This case does

not reference *Henson,* and does not hold that the defendant was a creditor, even though the debt

was assigned to the defendant.

Hayes v. Receivables Performance Mgmt., LLC, 2018 WL 4616309, at *3 (N.D. Ill.

2018) did not reference *Henson* and dealt with only questions about whether the plaintiff stated a

claim based on his own status, not that of the defendant.

Markette v. HSBC Bank, 2018 WL 1695368, at *9 (N.D. Ill. 2018) not only does not

reference *Henson,* but ignores it entirely, echoing the argument Attorney Pagel made here:

> Where the party seeking to collect a debt did not originate it but instead acquired
> it from another party, the party's status under the FDCPA turns on whether the
> debt was in default at the time it was acquired. *Ruth,* 577 F.3d at 796. "[T]he Act
> treats assignees as debt collectors if the debt sought to be collected was in default
> when acquired by the assignee, and as creditors if it was not." *Schlosser,* 323 F.3d
> at 536. Accordingly, "the purchaser of a debt in default is a debt collector for
> purposes of the FDCPA even though it owns the debt and is collecting for
> itself." *McKinney v. Cadleway Props., Inc.,* 548 F.3d 496, 501 (7th Cir. 2008).

Markette v. HSBC Bank, 2018 WL 1695368, at p. 25.[9]

The only case cited by UHG I which contains any reference to *Henson* is Bank of New York Mellon Tr. Co. N.A. v. Henderson, 862 F.3d 29, 34 (D.C. Cir. 2017). *Henderson* involved a lender foreclosing on property as an assignee of a debt, and this is what it said about *Henson*:

> That the debt was already in default when the Bank purchased it did not make the Bank a debt collector. *See Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 198 L. Ed. 2d 177, [slip op.] at 7-8 (U.S. June 12, 2017) (an entity collecting a debt for its own account is not a "debt collector" under the FDCPA even if it purchased the debt when it was in default). Therefore, Henderson's counterclaim under the FDCPA must fail.

Henderson, 862 F.3d at 34. But as noted in Attorney Pagel's declaration, his review of this case did not lead him to look into the cases it cited in detail, because the case involved foreclosure/assignee issues, not debt buyers who were more like UHG I.

In sum, then, in taking the first step of his response to UHG I's brief, Attorney Pagel would have found only one case that referenced the *Henson* decision from several years earlier, and that case was sufficiently factually distinct from the *Endres/UHG* I facts that it was reasonable for Attorney Pagel to not individually review each case cited therein, especially where he understood UHG I's primary argument to be that it was not a debt collector because it took no actions to collect the debt in this case.

**D. Attorney Pagel's method of updating case law in briefing was likewise reasonable, but did not bring *Henson* to his attention.**

At the time of writing the brief in this case, Attorney Pagel used the "Fastcase" legal database available through the Wisconsin State Bar. To locate individual cases in the given

---

[9] The page 9 UHG I cited to not only does not hold that an assignee of a debt cannot be a debt collector, it does not contain any substantive references to the argument itself; page 9 of the opinion sets out the arguments of the parties and some legal standards for pleading.

database, he will typically type in the parties' names, and, if necessary, narrow down the search using additional terms. This gives him a quick overview of how cases have been treated, and allows for nationwide updating and review. Ordinarily, he restricts his search to Seventh Circuit databases – the United States Supreme Court, the Seventh Circuit, all district courts in the Seventh Circuit, and Wisconsin appellate courts.

As of the date that Attorney Pagel submitted his brief in response to the motions for summary judgment (September 29, 2021), *Henson* had been cited in the following FDCPA cases:

- <u>Norman v. Ally Fin. Bank</u>, 2021 U.S. Dist. Lexis 1049 (N.D. Ind. 2021.)  This case involved a debtor suing the company that financed her car purchase; there was no question of whether an assignee of a debt in default was a debt collector, so the citation to *Henson* would not have reminded Attorney Pagel of that case.

- <u>Wagoner v. NPAS, Inc.</u>, 456 F. Supp.3d 1030 (N.D. Ind. 2020). In this case, the debtor sued NPAS for violating the FDCPA in collecting medical bills from her on behalf of the St. Joseph Regional Medical Center. The Court's opinion in the first paragraph says "The accounts here weren't in default when NPAS obtained them, so the company wasn't acting as a debt collector." <u>Pp. 1-2.</u>  The district court explicitly cited to <u>Schlosser v. Fairbanks Capital Corp.</u>, 323 F.3d 534 (7th Cir. 2003) for that proposition, and its immediately-following citation to *Henson* said simply: "The designations of creditor and debt collector thus ***often*** remain mutually exclusive. *Id. cf. Henson,* 137 S.Ct. at 1724 (assuming without granting this premise.) (Emphasis on *often* added.)  The *Wagoner* court specifically said that "The critical inquiry today ***is thus the debts status at the time it was obtained -- whether in default or not.***"  <u>Id</u> at 1036 (emphasis added.) The

*Wagoner* court then later noted that <u>McKinney v. Cadleway Props Inc.</u> 548 F.3d 496 (7th
Cir. 2008), which the *Wagoner* court discussed in terms of determining whether the
account was in default in *Wagoner*, and noted that *McKinney* had been "overruled on
other grounds" by *Henson,* but the parenthetical there said simply "overruling finding of
debt collector when there was no collection 'for another' per statute.)"  The final citation
to *Henson* in the *Wagoner* opinion is with reference to debt: "*See, e.g., Henson…* 'it
quickly becomes clear that Congress routinely used the word 'owed' to refer to present
(not past) debt relationships")

- ■ <u>Wheeler v. Midland Funding LLC</u>, 2020 US Dist Lex 52409 (N.D. Ill. 2020): In this
  case, the Court held that under *Henson,* Midland funding could not be a debt collector
  simply by virtue of owning a debt, saying "If Midland… is a debt collector, it would have
  to be based upon the first part of the definition – that the principal purpose of its business
  is debt collection." <u>Wheeler</u> at p. 24-25.  The Court then relied on a Third Circuit case
  and to hold that because "Defendants have presented no evidence that Midland Funding
  has any business purpose other than to purchase and collect debts" they were not entitled
  to summary judgment. Significantly, the Court noted that "It cannot be said Midland
  Funding has no collection interaction with consumers – it sues them, and that is an
  interaction," and held that because Midland had been a plaintiff in more than 3,000
  collection actions against Illinois residents, that fact "certainly supports the inference that
  Midland … uses the mail or telephones to collect its debts."  <u>Id. at p. 27.</u>  The *Wheeler*
  court then held that the plaintiffs have presented sufficient evidence to allow an inference
  that Midland's principal purpose was collecting debts. <u>Id. at p. 27.</u>

- Husain v. Bank of Am. N.A. 2020 U.S. Dist. Lexis 27349 (Ill. N.D. 2020) was similar to *Wagoner* in its analysis, but simpler because the two entities in question were not solely debt collection agencies.  The district court noted in a footnote that the plaintiffs had relied on "pre-*Henson* caselaw regarding whether the subject debt was in default when it was transferred," and noted that the line of reasoning was "expressly overturned by *Henson...*".

- Bielawski v. Midland Funding LLC, 2019 U.S. Dist. Lexis 153908 (N.D. Ill. 2019). Here, the Court held it was a jury question whether Midland was a debt collector under the "business purpose" exception, noting "copious" litigation over this second prong since *Henson.* The Court noted that "After *Henson,* courts have considered an entity's status as a debt buyer to be among these factors rather than as a dispositive fact." Id. at 22.

- Pennell v. Global Trust Mgmt, LLC, 2019 U.S. Dist. Lexis 141827 (S.D. Ind. 2019). Here, the Court noted that under *Henson,* the defendant debt purchaser "does not appear to be a debt collector" but also noted that the defendant had admitted that it was a debt collector in interrogatories, and decided the case on other grounds.

- Bernal v. NRA Grp. LLC, 930 F.3d 891 (7th Cir. 2019). This case did not involve questions of whether the defendant was a debt collector, and cited to *Henson* only for a discussion of the "past participle" in statutes.

- Marquez v. Weinstein, Pinson, & Riley, P.S., 2019 U.S. Dist. Lexis 69542 (N.D. Ill. 2019). In this case, *Henson* was referenced in footnote 8: "NCO makes no claim, for example, that it was engaged in collecting debts that it owned. See *Henson...* (individuals and entities that regularly purchase debts originated by someone else and then seek to collect those debts for their own accounts are not 'debt collectors' under the FDCPA.)

The plaintiffs there had sued claiming that state court complaints violated the FDCPA's prohibition on false and misleading representations. The Court held NCO to be a debt collector.

- Ferris v. Convergent Outsourcing, Inc. 2019 U.S. Dist. Lexis 52237 (N.D. Ill., 2019). In a footnote, the Court noted that "A company that purchases a loan while it is in default, and thus 'obtains' it in the usual sense (as opposed to just receiving rights to collect on it) *likely* would not qualify as a debt collector… See *Henson*.) (Emphasis on *likely* added.)

- Tabiti v. LVNV Funding LLC, 2019 U.S. Dist. Lexis, 51421 (N.D. Ill. 2019). Again, *Henson* was cited only in a footnote, noting that the plaintiff "devotes a considerable portion of his brief" to addressing *Henson,* but that LVNV waived the issue by not replying to it, and noted evidence that plaintiff had supplied supported a finding that LVNV was a debt collector.

- Dugan v. Midland Funding LLC, 2019 U.S. Dist. Lexis 227118 (N.D. Ill. 2019).  This case did not involve questions of whether the defendant was a debt collector; the citation to *Henson* was only for the general purpose of the FDCPA.

- Cadiz v. Educ. Credit Mgmt. Corp., 2019 U.S. Dist. Lexis 181182 (N.D. Ill. 2019). Here, the Court held that ECMC was a guaranty agency, so it did not meet the "principal purpose" definition under the FDCPA, and under *Henson,* its acquisition of defaulted student loans would not make it a debt collector.

- Graham v. Bd. Of Educ., 2019 U.S. Dist. Lexis 7579 (N.D. Ill. 2019). This case cited to *Henson* in holding that the Board of Education was not a debt collector when it threatened to terminate the health insurance of the plaintiff.

- <u>Schlaf v. Safeguard Properties</u>, 899 F. 3d 459 (7th Cir. 2018). This case involved a suit against a property preservation company; the Court cited to *Henson,* saying in a footnote that the "Supreme Court has clarified recently that even parties who 'regularly purchase debts originated by someone else and then seek to collect those debts for their own account are not debt collectors." <u>Id.</u> n. 26.  The Court noted that to completely avoid being a debt collector the entity must "collect[] their own debt in their own name and their principal purpose as an entity is not debt collection." <u>Id.</u> at 466.

- <u>Parker v. Capital One Auto Fin. Inc</u>. 729 Fed. Appx. 482 (7th Cir. 2018). This case involved a pleading question, whether the debtor had plausibly alleged that either defendant was a debt collector. Because she did not plead that "either company was a collector of debts owed or due another," she failed to state a claim, citing to *Henson.*

- <u>Shepard v. Spectrum</u>, 2018 U.S. Dist. Lexis 786689 (S.D. Ind. 2018). This was a case considering removal, in which the Court held that defendant Spectrum was not a debt collector because it was a "debt owner" under *Henson.* It did not involve assignments of debt.

- <u>Torres v. LVNV Funding</u>, 2018 U.S. Dist. Lexis 49885 (N.D. Ill. 2018). This case directly noted *Henson,* holding that "LVNV cannot hide behind *Henson* because Torres clearly sought to utilize the 'principle purpose' of debt collector" definition. But the Court went on to note that "***Based on the undisputable fact that LVNV sought to collect a debt that was in default when acquired,*** and because Torres sought to define LVNV as a debt collector under the first definition… LVNV is a debt collector. <u>Id.</u> at pp. 14-15 (emphasis added).

- Keys v. Collection Prof'ls. Inc. 2018 U.S. Dist. Lexis 48803 (N.D. Ill. 2018). This case did not involve consideration of whether the defendant was a debt collector, and cited to *Henson* for the general purposes of the FDCPA.

- Cook v. HSBC Bank USA N.A., 2018 U.S. Dist. Lexis 44613 (N.D. Ill. 2018). In this case, in a footnote, the Court noted the application of *Henson* to debt buyers, but said that "The Court cannot however, on this basis, dismiss counts 22 and 23… as to HSBC because ***Cook's central claim is that HSBC never actually took ownership of his debt."[10]*** Id., n. 7, (Emphasis added.)

- McMahon v. LVNV Funding, 301 F. Supp.3d 866 (N.D. Ill. 2018). This case, decided not long after *Henson,* held it a jury question whether LVNV was a debt collector, noting that "The Court fails to see why it should matter if the debt buyer hires a third party to actually collect its debts… If the collection of debts is precisely what sustains the business" then it is a debt collector. Id. at p. 37.  But the Court also noted that "plaintiff has adduced evidence that LVNV interacts with consumers by filing collection lawsuits against them." Attorney Pagel actually cited to this case in his brief at page 36,[11] but did so in attempting to refute UHG I's argument that it took no debt collection actions.

- Skibbe v. U.S. Bank Trust N.A. 309 F. Supp.3d 569 (N.D. Ill. 2018): In this case, the Court held that the plaintiff had not alleged that the defendant was a debt collector under

---

[10] Endres argued in this case that UHG I never owned this debt at the time the suit was filed; this Court rejected this argument.

[11] Further, UHG I engaged in "consumer facing" action when it became a party to a lawsuit and was (presumably) prepared to have a witness available to prove its case in February 2020 in state court.  See McMahon v. LVNV Funding LLC, 301 F. Supp.3d 866, 884 (ND Ill 2018) ("LVNV interacts with consumers by filing collection lawsuits against them.")

the "principal purpose" exception, and U.S. Bank was not a debt collector under the other prong after *Henson,* and granted summary judgment to U.S. Bank.

- <u>Skinner v. LVNV Funding LLC</u>, 2018 U.S. Dist. Lexis 2812 (N.D. Ill.) Here, the Court again discussed finding a debt purchaser to be a debt collector under the "primary purpose" definition, and granted summary judgment due to a failure to provide facts showing LVNV met that test.

- <u>Mitchell v. LVNV Funding LLC</u>, 2017 U.S. Dist. Lexis 206440 (N.D. Ill. 2017): here, the Court held on reconsideration after *Henson* that the evidence in the record supported a finding that LVNV met the "primary purpose" test because its business was the buying of debts and relying on those debts for income, it described itself as a collection agency, it filed "thousands" of lawsuits to collect debts, and other facts.

- <u>Bandas v. United Recovery Serv.</u>, 2017 U.S. Dist. Lexis 185573 (N.D. Ill. 2017). Here, the Court held that the plaintiff's allegations that URS did not own the debt meant it was not automatically covered by *Henson,* at least at the pleading stage.

- <u>Simpson v. Safeguard Props</u>. 2017 U.S. Dist. Lexis 159667 (N.D. Ill. 2017). While citing to *Henson,* this case did not involve an assignment of debt, but rather on "what it means to 'collect' a debt for purposes of" the FDCPA. <u>Id.</u> at p. 11.

- <u>Hernandez v. Wells Fargo Home Mortg</u>. 2017 Bankr. Lexis 2541 (Bk. N. Ill.): this case cited to *Henson* I noting that "Wells Fargo Home, as a creditor enforcing the debt it owns, ***may not*** be a debt collector." <u>Id.,</u> p. 15. (Emphasis added).

- <u>Schlaf v. Safeguard Props.</u>, 2017 U.S. Dist. Lexis 161807 (N.D. Ill. 2017): this case cited to *Henson* for the general purposes of the FDCPA, but analyzed the issue of whether defendant was a debt collector only under the principal purpose factor.

- Booker v. New Penn. Fin. LLC, 575 B.R. 823 (N.D. Ill. 2017): This case noted that *Henson* had effectively overruled *McKinney,* in a case considering whether an assignment of a note and mortgage had made the defendant a debt collector.

- Baranowski v. Blitt & Gaines, P.C. 2017 U.S. Dist. Lexis 121336 (N.D. Ill. 2017). The Court noted here that *Henson* "thus pulls the plug on any associated FDCPA claim" against the debt buyer, and dismissed the claim against the company *sua sponte,* interpreting *Henson* as saying "a company may collect debts for its own account without triggering the statutory 'debt collector' definition."

- Wheeler v. Midland Funding, 2017 U.S. Dist. Lexis 119475 (N.D. Ill. 2017). Here, the Court in its opening paragraph said "MCM is a collection agency that collects charged off-debts for owners of debt, specifically for Midland Funding LLC… As such, MCM is a debt collector… See *Henson.*"

- Loga v. Main St. Acquisition Corp., 2017 U.S. Dist. Lexis 94245 (N.D. Ill. 2017). Here, the Court denied a motion to reconsider, citing to *Henson,* without discussing the "identical principle" that *Henson* had just laid out.

One Fair Debt case that *did* mention *Henson* and which is on point in this case is Pennell v. LVNV Funding, 2021 U.S Dist. Lexis 35822 (S.D. Ind. 2021). There, indigent debtors retained a legal clinic for the sole purpose of getting debt collectors to stop calling them. The plaintiffs sued LVNV and Resurgent for contacting them after they knew they had counsel. The Court had to consider whether LVNV and Resurgent were debt collectors.

For LVNV, the Court considered LVNV's argument that it was not a debt collector because "it *owns* the debts it seeks to collect." Id. at p. 7 (emphasis in original.)  The district court said:

> **Although the Seventh Circuit apparently has not confronted the issue**, other circuits have uniformly rejected LVNV's argument that a debt owner collecting its own debts cannot meet the principal-purpose definition.
>
> ….
>
> LVNV purchased the debts for the principal purpose of collecting on them, and it would not have collected on the debts unless they had purchased them. Consequently, Plaintiffs have established that LVNV is a debt collector as a matter of law.

Pennell, at pp. 8-9.  (Emphasis added).  The Court then turned to Resurgent. Resurgent argued that it only "sometimes" sent debt collection communications itself, but "by and large [it] hires other debt collectors to collect on behalf of LVNV." Id. at p. 9.  As LVNV's "attorney in fact" the Court held Resurgent to be a debt collector.

Pennell is significant in this context both because this case was decided *after* both *Schlaf* and *Parker*, but the judge in *Pennell* believed the Seventh Circuit had "not confronted" the issue of whether someone could be a debt collector while collecting their own debt, and because under *Pennell,* Endres' counsel's argument that UHG I could be a debt collector while collecting on its own behalf was at the very least in good faith.[12]

Attorney Pagel respectfully submits that the foregoing shows first that *Henson* was not, at least to his knowledge, ever cited in any opinion in any case coming out of the Wisconsin courts – including cases Attorney Pagel litigated himself against debt buyers since *Henson,* and including *this* case, where neither defendant referenced *Henson* until the reply brief by UHG I*,* which supports his argument that while he would almost certainly have read the case opinion when issued, he simply did not remember it when litigating this case.

---

[12] Attorney Pagel concedes that he was unaware of this case when writing his briefs; but had he been aware of it, he would have been able to cite to it to argue that UHG I was a debt collector and that the Seventh Circuit had not squarely confronted the issue.

Secondly, the Seventh Circuit cases that referenced *Henson* did not involve debt buyers, but instead dealt with companies that were clearly creditors (Capital One) or property preservation companies (Safeguard.) In reviewing and updating case law, it is reasonable for an attorney to devote less time to reviewing and analyzing cases that are not factually on point with the instant case, especially when there is so much FDCPA litigation.

Finally, many if not all of those cases would not have shown up when Attorney Pagel updated and reviewed case law to determine if there had been any new developments in the issues involved in the case, based on how Attorney Pagel at that time used legal research services to update cases. The cases cited in the foregoing in this section were found by Attorney Pagel on Lexis, using Lexis' Sheperdization function.

The foregoing list of cases were cases that Attorney Pagel found and reviewed in the course of responding to this Court's order to show cause, demonstrating that Attorney Pagel attempts to be thorough in addressing legal questions that are raised squarely by any briefing or order.

In this case, however, Attorney Pagel's additional research was devoted to attempting to locate cases that dealt directly with UHG I's contention that it could not be a debt collector because it did not engage in debt collection activities. For that reason, Attorney Pagel did not engage in a broader search to determine if there were other cases that affected the determination of whether an entity is a debt collector.

**E. Attorney Pagel's conduct in this case demonstrates that he understands his duty to cite adverse decisions, and does so when he is aware of them.**

Moreover, had Attorney Pagel remembered *Henson,* or been alerted to its existence prior to the UHG I reply brief and this Court's order, he would have discussed it and attempted to

distinguish it. This Court can at the least infer that from the fact that Attorney Pagel in this case noted the existence of multiple cases that had held against his position regarding section 425.107.

This Court has noted that the *Ruth* opinion cited by Attorney Pagel was no longer good law, since the Seventh Circuit had referenced *Henson* in two cases, and, of course, since a U.S. Supreme Court ruling would be binding on the Seventh Circuit, and this Court, regardless of whether the Seventh Circuit had ever mentioned it.

But Attorney Pagel, despite reviewing case law, did not find *Ruth* to be overruled, and had little reason (especially given his failure to remember reading the *Henson* opinion several years before) to think *Ruth* was not good law, since *Henson* does not cite to *Ruth*. Although this Court points out that *Henson* did cite to *McKinney v. Cadleway* (misspelled as *Caldeway* in the opinion online), Attorney Pagel's brief did not cite to *McKinney,* so he would have had no reason to Shepherdize or check on the validity of that case – especially where UHG I itself cited to *McKinney* for the distinction between creditors and debt collectors. (R. 35, p. 9.)

## **Conclusion:**

Attorney Pagel understands the Court's concerns, and understands that the Court relies on counsel to advise it of all the pertinent legal authority and to argue in good faith before this Court, and all courts.

As the record herein demonstrates, Attorney Pagel had no intention of attempting to hide the existence of adverse authority from this Court. Attorney Pagel's belief that *Kirsch's* Supreme Court opinion was not relevant to the 425.107 issue was reasonable given that case's holding, the fact that other lawyers arguing that issue never cited to the Supreme Court version of *Kirsch*, and that the issue was pending before the Wisconsin Supreme Court at the time Attorney Pagel made

his arguments in this case. Had the Wisconsin Supreme Court ruled in his favor on the section 425.107 standalone claims issue – as one Justice wanted to – Attorney Pagel would have been correct in his arguments before this Court. He was not *wrong* at the time he made them (and not wrong to not mention *Kirsch*); he was made wrong when the Wisconsin Supreme Court actually decided that issue.

As for the *Henson* issue, lawyers cannot be expected to remember every legal opinion they read, or even every U.S. Supreme Court opinion they have read in their primary area of practice. *Henson* was just over four years old at the time Attorney Pagel wrote his brief in this case, and had been referenced by only two Seventh Circuit decisions at the time, and those cases did not in any way appear related to this matter. *Henson* had never been raised in any case he litigated during those four years, and was not raised in this case until the reply brief. And while *Henson* was directly on point regarding whether a debt buyer is a debt collector *solely* by virtue of being assigned a debt in default, Attorney Pagel, had he been consciously aware of *Henson,* would have had no reason not to reference the case, because he then could have tailored his arguments to the other prong still left open by *Henson.*

For all the foregoing reasons, the Court is requested to find that Attorney Pagel's conduct met with the applicable ethical standards and that no sanction is warranted.

Dated: This 1st day of March, 2022.

**Lawton & Cates, S.C.**
Attorneys for Plaintiff, Susan Endres
*Electronically Signed By:*

*/s/ Briane F. Pagel*
Attorney Briane F. Pagel
State Bar No. 1025514

P.O. Address:
345 W. Washington Ave. Ste. 201
P.O. Box 2965
Madison, WI 53703
P: 608.282.6200/F: 608.282.6252
bpagel@lawtoncates.com